UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PACIFIC MEDIA WORKERS GUILD, CWA LOCAL 39521,<br><br>Plaintiff,<br><br>v.<br><br>SAN FRANCISCO CHRONICLE,<br><br>Defendant. | Case No. 17-cv-05953-HSG<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 34, 36 |

On October 17, 2017, Plaintiff Pacific Media Workers Guild, CWA 39521 (the "Guild") filed a complaint to compel the San Francisco Chronicle (the "Chronicle") to arbitrate two grievances. Dkt. No. 1 ("Compl."). On February 7, 2018, the Court set a schedule to address the question of arbitrability under the parties' Collective Bargaining Agreement. Dkt. No. 33. Pending before the Court are the parties' cross-motions for summary judgment on the issue of arbitrability. The Court GRANTS Plaintiff's motion for summary judgment, and DENIES Defendant's motion for partial summary judgment.

**I.  BACKGROUND**

**A.  The CBA's Arbitration Provision**

Between July 1, 2012 and June 30, 2017, the Guild and the Chronicle were parties to a Collective Bargaining Agreement that covered some of the Chronicle's employees and provided for arbitration of disputes under certain circumstances. Compl. ¶ 2 & Ex. A ("CBA").

Article VI of the CBA, titled "Grievance and Arbitration Procedure" lays out procedures for settling all grievances between the parties arising under the CBA. CBA at 6–8. This section explains that all grievances must be submitted "in writing within twenty-one (21) calendar days of when the grieving party knew or should have known of the action or event giving rise to the

grievance." CBA at 7. The CBA further states that:

> Any grievance filed on or after the date upon which this Amendment is signed, other than a grievance protesting a discharge for good and sufficient cause or discipline, shall not be subject to arbitration for the duration of this Agreement unless the parties mutually agree in writing otherwise, such agreement not to be unreasonably withheld.

*Id.*

The CBA specifies that a grievance "may be moved to arbitration by either party at any time more than fifteen (15) calendar days after receipt of the written notice . . . but in no event later than forty-five (45) calendar days of receipt of such notice." *Id*. "Any grievance not moved to arbitration within said thirty (30) calendar days shall be deemed abandoned." *Id*. "All issues concerning arbitrability shall be submitted only to the arbitrator for decision, and such decision shall be final and binding." *Id.* at 8.

### B. The Grievances

In February 2017, the Guild filed a grievance disputing the Chronicle's policy of terminating unused vacation time. Compl., Ex. B; Dkt. No. 34 at 3; Dkt. No. 36 at 4–6. Article XII of the CBA states that "[a]ll vacation must be taken in the year in which it is earned or else it will be forfeited unless a manager or supervisor in the applicable department permits an Employee to carry over time." CBA at 14. The parties dispute whether the unused vacation time addressed in the CBA also encompasses accrued vacation pay. *See* Dkt. No. 34 at 3.

On September 11, 2017, the Guild filed a grievance in connection with the Chronicle's policy of denying certain temporary employees vacation benefits. Compl., Ex. E. Article XVIII of the CBA states that "Temporary Employees, including On-Call Employees, shall be subject to the provisions of this Agreement except as otherwise expressly provided herein." CBA at 21. The CBA then states that "Temporary Employees, including On-Call Employees, shall not be eligible to receive any severance payments or benefits for layoffs or termination of employment." *Id*. The parties dispute whether temporary employees are entitled to the same vacation accrual benefits as other employees covered under the CBA, or if those vacation benefits are "benefits for layoffs or termination of employment." Dkt. No. 34 at 3–4; Dkt. No. 36 at 7–8.

On April 11, 2017, the Guild gave notice of its intent to compel the Chronicle to submit the

first grievance relating to vacation accrual to arbitration pursuant to the parties' CBA. Dkt. No. 36 at 6, Ex. P. On October 17, 2017, the Guild gave notice of its intent to compel the Chronicle to submit the second grievance relating to temporary employees' vacation accrual to arbitration. Dkt. No. 36 at 8, Ex. X.

## II. LEGAL STANDARD

### A. Motions for Summary Judgment

Summary judgment is proper when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" if there is evidence in the record sufficient for a reasonable trier of fact to decide in favor of the nonmoving party. *Id.* The Court views the inferences reasonably drawn from the materials in the record in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986), and "may not weigh the evidence or make credibility determinations," *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997), *overruled on other grounds by Shakur v. Schriro*, 514 F.3d 878, 884-85 (9th Cir. 2008).

The moving party bears both the ultimate burden of persuasion and the initial burden of producing those portions of the pleadings, discovery, and affidavits that show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will not bear the burden of proof on an issue at trial, it "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Where the moving party will bear the burden of proof on an issue at trial, it must also show that no reasonable trier of fact could not find in its favor. *Celotex Corp.*, 477 U.S. at 325. In either case, the movant "may not require the nonmoving party to produce evidence supporting its claim or defense simply by saying that the nonmoving party has no such evidence." *Nissan Fire & Marine Ins. Co.*, 210 F.3d at 1105. "If a moving party fails to carry its initial

burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." *Id.* at 1102-03.

"If, however, a moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense." *Id.* at 1103. In doing so, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586. A nonmoving party must also "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). If a nonmoving party fails to produce evidence that supports its claim or defense, courts enter summary judgment in favor of the movant. *Celotex Corp.*, 477 U.S. at 323.

**B.  Arbitration Agreements**

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.,* sets forth a policy favoring arbitration agreements and establishes that a written arbitration agreement is "valid, irrevocable, and enforceable."  9 U.S.C. § 2; *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24 (1983) (noting federal policy favoring arbitration). The FAA allows that a party "aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that . . . arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. Federal policy is "simply to ensure the enforceability, according to their terms, of private agreements to arbitrate." *Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Jr. Univ.,* 489 U.S. 468, 476 (1989). Courts must resolve any "ambiguities as to the scope of the arbitration clause itself . . . in favor of arbitration." *Id.*

When considering a motion to compel arbitration, the court is limited to determining (1) whether a valid arbitration agreement exists, and, if so (2) whether the arbitration agreement encompasses the dispute at issue. *Cox v. Ocean View Hotel Corp.,* 533 F.3d 1114, 1119 (9th Cir. 2008). If these conditions are satisfied, the court must compel arbitration. 9 U.S.C. § 4; *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 218 (1985) ("By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall

4

direct the parties to proceed to arbitration.").

"Courts refer the question of arbitrability to the arbitrator only if [the parties] leave no doubt that such was their intent." *LAWI/CSA Consolidators, Inc. v. Wholesale & Retail Food Distribution, Teamsters Local 63*, 849 F.2d 1236, 1239 (9th Cir. 1988) (quoting *Bhd. of Teamsters & Auto Truck Drivers Local No. 70 v. Interstate Distrib. Co.*, 832 F.2d 507, 510 (9th Cir. 1987)) (internal quotation marks omitted). "[U]nlike the arbitrability of claims in general, whether the court or the arbitrator decides arbitrability is an issue for judicial determination unless the parties *clearly and unmistakably provide otherwise.*" *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1072 (9th Cir. 2013) (quoting *Howsam v. Dean Witter Reynolds, Inc.,* 537 U.S. 79, 83 (2002)) (emphasis in original). When the parties have agreed to arbitrate questions of arbitrability, procedural questions, such as whether a contractual grievance procedure has been followed, or the effect of waiver or delay, are presumptively also reserved exclusively for arbitration. *Howsam v. Dean Witter Reynolds Inc.*, 537 U.S. 79, 84 (2002).

## III. DISCUSSION

### C. Arbitrability Subject to Arbitration

The Court first addresses whether Article VI subsection (c)(9) clearly and unmistakably provides that the parties have agreed that an arbitrator is to decide the issues of arbitrability raised in the parties' cross-motions. Defendant contends that Article VI subsection (c)(9), which states that "[a]ll issues concerning arbitrability shall be submitted only to the arbitrator for decision, and such decision shall be final and binding," applies only to grievances for which both parties have already consented to arbitration. CBA at 8; Dkt. No. 36 at 13. Plaintiff contends that the provision applies to any grievance that any one party has submitted for arbitration. Dkt. No. 37 at 8–11.

Defendant's interpretation does not flow from the language of the CBA, which contemplates that a "motion for arbitration shall be by written notice from the moving party to the other party," and provides in the next sentence that "the parties then shall take the issue to arbitration according to the procedures hereinafter set forth." CBA at 7. That language indicates that a single party may move for arbitration, and after that motion has been made, the question of

5

arbitrability is for the arbitrator. Moreover, the very nature of disputed arbitrability issues suggests that one of the parties has not agreed to arbitration. Defendant's proffered interpretation of the CBA requires arbitrability issues to be submitted to the arbitrator only in circumstances when both parties have agreed to arbitrate those issues. The Court finds that interpretation inconsistent with the language of the CBA read as a whole.

It is thus clear that subsection (c)(9) delegates actual substantive and procedural arbitrability disagreements to the arbitrator.[1] Accordingly, the Court finds that where, as here, the parties disagree about issues of arbitrability, the CBA is clear that those arbitrability issues must be submitted to the arbitrator.[2]

### D. Procedural Arbitrability

"[A] court may consider a strictly procedural question as to the timeliness of a demand for arbitration in those rare instances where no factual dispute exists and resolution of the issue would preclude all need for arbitration." *Retail Delivery Drivers, Driver Salesmen, Produce Workers & Helpers Local 588 v. Servomation Corp.*, 717 F.2d 475, 478 (9th Cir. 1983); *see also Pac. Media Workers Guild v. San Francisco Chronicle*, No. 17-CV-00172-WHO, 2017 WL 1861853, at *2 (N.D. Cal. May 9, 2017), *appeal dismissed sub nom. Pac. Media Workers Guild, CWA 39521 v. San Francisco Chronicle, a division of Hearst Commc'ns, Inc.*, No. 17-16169, 2017 WL 6026698 (9th Cir. Oct. 17, 2017).

The Court next addresses the question of whether the two grievances are non-arbitrable as a matter of law due to any procedural violations in filing the grievances. Defendant contends that the vacation use grievance arose from an "action or event" that the Guild "knew or should have known of" more than 21 calendar days before the filing of the grievance. Dkt. No. 36 at 14 (citing

---

[1] While the language of the CBA is clear absent examination of any extrinsic evidence, the Court finds it noteworthy that in the context of the negotiation of an earlier CBA containing substantively identical language, Defendant's lead negotiator directly represented to Plaintiff that he thought that if Defendant invoked the "unless the parties mutually agree in writing" clause, Plaintiff "would still have the right to have an arbitrator decide if we were 'unreasonably withholding' our consent." Dkt. No. 37-1 at ¶¶ 3-9 and Exs. A–C.

[2] As the Court finds in favor of Plaintiff as to the scope of subsection (c)(9), the Court will not address whether Defendant is collaterally or judicially estopped from presenting its argument with respect to this subsection. *See* Dkt. No. 34 at 6–7.

6

CBA at 7). Defendant notes that the Chronicle first stated its intention to enforce the vacation use policy in question in May 2015, nearly two years prior to the Guild's filed grievance. Dkt. No. 36 at 4, 14. Defendant similarly contends that the Chronicle disclosed to the Guild its policy not to give temporary employees vacation accrual benefits in October 2016, nearly a year before the Guild's filed grievance. Dkt. No. 36 at 15.

Plaintiff contends that the May 2015 notification and subsequent notifications from the Chronicle are not "event[s] giving rise to the grievance" as contemplated in the CBA, and that the event giving rise to the grievance is the actual harm that occurred when the Chronicle removed employees' vacation time in 2017. Dkt. No. 37 at 19–20. Plaintiff also contends that the temporary employee grievance is ongoing, and therefore the event giving rise to the grievance arises every pay period when the Chronicle does not accrue vacation for temporary employees. Dkt. No. 37 at 20.

Each party's position is a plausible interpretation of the CBA as applied to the vacation use grievance and the temporary employee grievance, and the Court therefore cannot find the grievances untimely as a matter of law.

## IV. CONCLUSION

The Court therefore **GRANTS** Plaintiff's motion to for summary judgment and **DENIES** Defendant's motion for partial summary judgment. All remaining questions of arbitrability must be submitted to arbitration under the parties' CBA. This case shall be administratively closed, but the court will retain jurisdiction to confirm the final arbitration award as necessary

**IT IS SO ORDERED.**

Dated: 7/2/2018

HAYWOOD S. GILLIAM, JR.
United States District Judge